UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 08-10157-RWZ


CECIL BARRETT, JR., *et al.*

v.

OPTION ONE MORTGAGE CORPORATION
and H&R BLOCK MORTGAGE CORPORATION
n/k/a OPTION ONE MORTGAGE SERVICES, INC.


MEMORANDUM AND ORDER

September 18, 2012


ZOBEL, D.J.

On March 21, 2011, the court issued an order certifying a plaintiff class in this action to include all African-American borrowers who obtained a mortgage loan from one of the defendants (collectively, "Option One") within a certain period of time.[1] Docket # 103. Three months later, the Supreme Court decided Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011). Now pending before the court is Option One's motion to decertify the class in light of that case.

## I.    Background

The factual background of this case is detailed in the certification order. Briefly,

---

[1]The certification order left unresolved the beginning and end of the class period. Given the court's resolution of the present motion, it is unnecessary to clarify the former class period, and plaintiffs' motion for clarification (Docket # 11) is denied as moot.

plaintiffs are a number of African-American individuals who obtained home mortgage loans from Option One through mortgage brokers. They allege that defendants' loan pricing policy violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA"), and the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"), by giving authorized brokers the discretion to impose additional charges unrelated to a borrower's creditworthiness. Plaintiffs claim this policy had a disparate impact on African-American borrowers by resulting in higher mortgage rates for African-American borrowers than similarly situated white borrowers.

According to plaintiffs, Option One's loan pricing consisted of a fixed and ap discretionary component. When a proposed borrower applied for a new loan, Option One first calculated a fixed "par rate" for that borrower. The par rate was based on objective criteria of creditworthiness, such as the borrower's credit score and the value of the property to be mortgaged. That fixed component is not at issue. However, Option One also included a discretionary component in its credit pricing system. Specifically, it authorized its brokers to set interest rates higher than the par rate and to charge loan origination and processing fees. These higher rates and additional fees were left to the individual brokers' subjective discretion; Option One only set a maximum markup for the par rate. Brokers were paid more for loans that yielded higher rates and thus cost consumers more.

Plaintiffs argue that Option One's policy of granting brokers discretion to set higher rates had an adverse effect on African-American borrowers, because on average Option One's brokers assessed higher discretionary charges against African-

American borrowers than against similarly situated white borrowers. Plaintiffs do not claim that Option One's policy was intended to discriminate against African-Americans; instead, they bring their claims under a disparate impact theory, which challenges "practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 23(a)(2), a class action may only proceed if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); see also Wal-Mart, 131 S. Ct. at 2550-51. This requirement is generally known as "commonality." Members of the class need not share every fact in common or present identical legal issues; however, they must share "a sufficient constellation of legal issues [that] binds class members together." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).   If a certified class no longer meets the commonality requirement, whether because of factual or legal developments, it must be decertified. See O'Connor v. Boeing North American, Inc., 197 F.R.D. 404, 410-13 (C.D. Cal. 2000) (decertifying for failure to meet Rule 23(a)'s typicality requirement).

Decertification is governed by Federal Rule of Civil Procedure 23(c)(1)(C), which authorizes the court to decertify a class "at any time before final judgment." In re Sonus Networks, Inc. Securities Litigation, 229 F.R.D. 339, 348 (D. Mass. 2005). The moving party bears the burden of showing that decertification is proper. Donovan v. Philip Morris USA, Civil Action No. 06-12234-DJC, 2012 WL 957633, at *4 (D. Mass. Mar. 21,

2012).

III.   **Analysis**

The court's certification order concluded that plaintiffs had demonstrated commonality because the class members' claims shared a legal and factual question: whether Option One's pricing policy, by granting brokers discretion to set higher rates, resulted in a disparate impact on African-American borrowers. It found plaintiffs' contentions supported by the expert report of Professor Ian Ayres of Yale Law School. Id. at 9; see Docket # 89-3, Report of Professor Ayres ("Ayres Report"). Professor Ayres prepared a regression analysis comparing the annual percentage rate ("APR") paid by white and minority borrowers for Option One wholesale loans originated from 2001 to 2007. He found that, controlling for all legitimate risk factors that might affect the cost of a loan, the APRs paid by African-American borrowers nationwide were on average 0.086% higher than the APRs paid by similarly situated white borrowers. Ayres Report at 7 tbl.1. That is, in dollar terms, African-American borrowers on average spent about $134 more per year on their mortgages than similarly situated white borrowers. See id.

Under Wal-Mart, this showing is no longer sufficient to establish commonality. Wal-Mart establishes that a nationwide policy of granting discretion to local units can only raise a common question if the local units have a "common mode of exercising discretion." Wal-Mart, 131 S. Ct. at 2554-55. Furthermore, Wal-Mart disapproves the use of aggregate, nationwide statistics to prove a common method of exercising discretion at the local level. See id. at 2555.

In Wal-Mart, the Supreme Court considered a plaintiff class of "about one and a

5

half million plaintiffs, current and former female employees of . . . Wal-Mart." <u>Id.</u> at
2547. The plaintiffs alleged that Wal-Mart's policy of granting local managers discretion
over pay and promotion decisions violated Title VII under a disparate impact theory,
because local managers disproportionately exercised that discretion in favor of male
employees. The plaintiffs further argued that a uniform "corporate culture" at Wal-Mart
allowed bias against women to affect local managers' exercise of discretion, "thereby
making every woman at the company the victim of one common discriminatory
practice." <u>Id.</u> at 2548. In support of their argument, the plaintiffs submitted statistical
analyses performed at the regional and national level showing that there were
statistically significant disparities between men and women at Wal-Mart, and that these
disparities could only be explained by gender discrimination. <u>Id.</u> at 2555.

 The Court ruled that the plaintiff class failed to meet the commonality
requirement of Rule 23(a)(2). It described Wal-Mart's policy of allowing discretion by
local managers as "just the opposite of a uniform employment practice that would
provide the commonality needed for a class action; it is a policy <u>against having</u> uniform
employment practices." <u>Id.</u> at 2554. The Court recognized that giving discretion to
lower-level supervisors could be a policy giving rise to a disparate impact claim, but
ruled that such a claim would only be common to members of a nationwide class if the
plaintiffs identified a "common mode of exercising discretion that pervades the entire
company." <u>Id.</u> at 2554-55. Otherwise, the Court found, "[i]n a company of Wal-Mart's
size and geographical scope, it is quite unbelievable that all managers would exercise
their discretion in a common way without some common direction." <u>Id.</u> at 2555; <u>see also</u>

id. at 2555-56 (emphasizing that plaintiffs must show a "specific employment practice" beyond "the bare existence of delegated discretion").

Furthermore, the Court held that the plaintiffs' statistical analyses were insufficient to show a common method of exercising discretion that would satisfy Rule 23(a)(2). Because the statistical analyses were performed on regional and national data, they could not "establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends." Id. at 2555. In other words, the Wal-Mart plaintiffs could not demonstrate commonality just by pointing to a disparate impact in the nationwide average; instead, they would have to show a disparate impact in each store where members of the plaintiff class worked. "Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice." Id. at 2556.

Plaintiffs' class in this case faces the same commonality problem as did the Wal-Mart class. Plaintiffs' challenge Option One's policy of granting its brokers discretion to set higher rates. However, they do not point to any "common mode of exercising discretion," see id. at 2555, that was shared by all of Option One's brokers. For instance, if plaintiffs claimed that Option One's brokers uniformly exercised their discretion by considering specific attributes that produce disparate impact—such as "scores on general aptitude tests or educational achievements," id. at 2254—they would state a common question justifying class treatment. But without some such claim, the Supreme Court tells us, "demonstrating the invalidity of one [broker's] use of discretion will do nothing to demonstrate the invalidity of another's." Id. Because

plaintiffs do not claim that all of Option One's brokers exercised their discretion in the same way, they do not raise a single question common to all plaintiffs in the class.

As in Wal-Mart, plaintiffs here submit a statistical analysis to demonstrate that Option One's policy had a disparate impact. And as in Wal-Mart, plaintiffs' analysis examines aggregate data at a national level, rather than considering each broker individually. Plaintiffs' statistical analysis shows that on average, nationwide, African-American borrowers pay more for their loans than white borrowers. But that is no longer sufficient to establish commonality. Instead, under Wal-Mart, plaintiffs can only show a common question if they can show a common disparate impact at the level of each individual broker, thereby raising the inference that the brokers shared a common mode of exercising their discretion.

Plaintiffs make three arguments seeking to distinguish Wal-Mart and show a common question. First, they point out that each broker used the same two-stage process to set the class members' mortgage rates. However, the first stage of this process—Option One's par rate—is not at issue. Plaintiffs only challenge the second stage of the process: the brokers' discretion to set rates higher than the par rate. And as discussed above, plaintiffs do not allege any specific common practice that the brokers used in exercising that discretion. Second, plaintiffs note that all of the brokers' decisions are recorded in the terms of a consummated loan, making it easier to compare the outcomes for similarly-situated candidates. While that makes this case factually different from Wal-Mart, it does not raise any common question satisfying Rule 23(a)(2). Finally, plaintiffs argue that all of the brokers' decisions "are explainable by a

common profit motive." Id. That probably does not distinguish this case from Wal-Mart; there is a fair argument that the Wal-Mart managers' employment decisions can be similarly explained. The argument also cuts against plaintiffs' primary claim that Option One's pricing policy creates a disparate impact not justified by any legitimate business reason, since a common profit motive is presumably a legitimate business reason. But most importantly, the argument fails to show any common practice or mode of exercising discretion. Even if driven by a common profit motive, the brokers could have made widely different decisions in pursuit of that profit motive. Cf. Wal-Mart, 131 S. Ct. at 2554 (noting that commonality fails where some managers might use sex-neutral and performance-based criteria, some managers might use criteria with a disparate impact, and some managers might intentionally discriminate).

Other courts in similar cases have also concluded post-Wal-Mart that classes like the one certified here lack commonality. See, e.g., In re Countrywide Fin. Mortg. Lending Practices Litig., MDL No. 1974, 2011 WL 4862174 (W.D. Ky. Oct. 13, 2011), perm. app. granted, No. 11-0514 (6th Cir. Mar. 7, 2012); Rodriguez v. Nat'l City Bank, 277 F.R.D. 148 (E.D. Pa. 2011); In re Wells Fargo Residential Mortg. Lending Discrimination Litig., No. 08-MD-01930 MMC, 2011 WL 3903117 (N.D. Cal. Sept. 6, 2011).[2] For the reasons set forth above, the court agrees.

## IV.   Conclusion

---

[2]Plaintiffs cite one similar case reaching the opposite conclusion. See Transcript of Preliminary Approval of Settlement Hearing, Harris v. Citigroup, Inc., Civil Action No. 08-10147-MLW (D. Mass. Feb. 15, 2012). However, that decision arose in the context of a settlement hearing, and the parties did not vigorously debate whether certification was proper. See id. at 18-19, 30-31. The ruling in that case was issued from the bench. Id. at 29-31.

Defendants' Motion to Decertify Class (Docket # 112) is ALLOWED.

Accordingly, it is ORDERED that the class be and hereby is decertified.

|    September 18, 2012    |    /s/Rya W. Zobel    |
|:---:|:---:|
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |